**Ex parte Edward Anthony ELLIS.**

**No. 71107.**

Court of Criminal Appeals of Texas, En Banc.

May 29, 1991.

Eden E. Harrington, Paul Bottei, Austin, for appellant.

John B. Holmes, Jr., Dist. Atty., and Caprice Cosper, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Art. 11.07, V.A.C.C.P.

Applicant was convicted of capital murder and sentenced to death by the trial judge. Art. 37.071(e), V.A.C.C.P. This Court affirmed applicant's conviction and sentence on direct appeal. *Ellis v. State,* 726 S.W.2d 39 (Tex.Cr.App.1986). Applicant's petition for writ of certiorari was denied by the United States Supreme Court on March 9, 1987. *Ellis v. Texas,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

Applicant presents eight allegations in this application challenging the validity of his conviction and sentence. On July 6, 1990, without holding an evidentiary hearing, the judge of the convicting court recommended applicant be denied relief. This Court subsequently ordered this cause filed and set for submission on applicant's first two allegations and granted applicant a stay of execution.

In his first allegation, applicant claims that his sentencing jury was precluded from considering and giving effect to mitigating evidence presented during his trial in violation of "the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and similar provisions of the Texas Constitution." He relies upon *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), and *Mayo v. Lynaugh,* 893 F.2d 683 (5th Cir.1990), for relief. Applicant did not object to the jury charge at punishment on this basis or raise this issue on direct appeal.[1] See *Ellis,* 726 S.W.2d 39. This Court recently held, however, that this issue may be raised for the first time via a writ of habeas corpus. *Ex parte Goodman* (Tex.Cr.App. No. 70,887 delivered May 29, 1991), slip op. at pp. 3–4.[2] We therefore address the merits of applicant's contentions.

In *Franklin,* 108 S.Ct. 2320, the petitioner contended, *inter alia,* that his sentenc-

---

1. Applicant did, however, file pretrial documents challenging the constitutionality of Art. 37.071, V.A.C.C.P., but not on the basis presented herein.

2. Also, applicant's failure to specifically object on this basis would not procedurally bar his claim. See *Black v. State* (Tex.Cr.App. No. 69,-648 delivered May 29, 1991) (Campbell, J., concurring to Part II.B.).

ing jury did not adequately consider as mitigating evidence his good prison disciplinary record. *Id.* 108 S.Ct. at 2328. Franklin argued this mitigating evidence, which was the only such evidence introduced, "had significance independent of its relevance to the Special Issues—as a reflection on his 'character[,]'" and requested a jury instruction which would allow the jury to impose a life sentence even if it answered "yes" to both punishment issues submitted. *Id.* 108 S.Ct. at 2329. A plurality of the Supreme Court concluded the jury's consideration of Franklin's mitigating evidence was not improperly limited because the jury was free to give appropriate weight to this evidence through its consideration of the second special issue. *Id.* 108 S.Ct. at 2330. Thus, Franklin was not sentenced to death in violation of the Eighth Amendment.

*Franklin* foreshadowed the Supreme Court's opinion in *Penry*, 109 S.Ct. 2934, the following term. Penry argued that his mitigating evidence of mental retardation and child abuse had relevance to his moral culpability beyond the scope of the special issues under Art. 37.071(b), V.A.C.C.P., and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. 109 S.Ct. at 2948. The Supreme Court agreed and stated a special instruction with regard to the mitigating evidence was necessary.[3]

The Supreme Court addressed the need for the additional instruction in light of the three punishment issues, Art. 37.071(b)(1), (2), and (3). As to the first issue, the Court opined that without this additional instruction "a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime 'deliberately'." 109 S.Ct. at

2949. The Court recognized the double-edged sword characteristic of Penry's mitigating evidence under the second special issue. That is, the very evidence which might diminish his blameworthiness also tended to show there was a probability that he would be a continuing threat to society. Thus, the second special issue did not provide a vehicle for the jury to give mitigating effect to Penry's "mitigating" evidence. *Id.* Likewise, the Court found the third special issue addressing provocation, which was given in Penry's jury charge, failed to allow a juror who believed Penry lacked the moral culpability to be sentenced to death to express that view in this issue if the juror concluded Penry's action was not a reasonable response to the provocation. *Id.* 109 S.Ct. at 2950. Thus, as applied to Penry, Art. 37.071 was unconstitutional.

The petitioner in *Mayo*, 893 F.2d 683, also relied on the decisions in *Franklin* and *Penry*. Mayo's counsel presented eight witnesses during the punishment phase of his trial who testified to Mayo's various good works, his religious faith, his artistic ability and interest, and the mental and physical abuse he suffered at the hands of his father, who at the time of trial was imprisoned for raping a child. The prosecutor's closing argument "focused the jury's attention on the exclusive relationship between the evidence presented at the guilt-innocence and sentencing phases and the special issues, but[,]" the Fifth Circuit determined, "the special issues did not afford sufficient opportunity for consideration of the mitigating evidence Mayo offered."[4] *Id.* at 688. The Fifth Circuit concluded Mayo had presented sufficient constitutionally mitigating evidence to warrant the additional *"Penry"* jury instruction. *Id.* at 689.

In the case at bar, applicant presented no mitigating evidence during the punishment phase of his trial, unlike the defendants in

---

**3.** Penry had requested a type of such an instruction during the punishment phase which the trial judge denied.

**4.** The prosecutor used Mayo's history of abuse as evidence of his potential for future dangerousness. He also used pictures introduced into

evidence to show Mayo's artistic sensibilities as aggravating evidence by arguing the pictures evidenced Mayo's fascination with young girls "not unlike the victim of [his] crime." 893 F.2d at 688.

*Franklin, Penry,* and *Mayo.* There was, however, testimony during the guilt/innocence phase of the trial which applicant asserts was mitigating but which could not be given effect by the jury. Specifically, applicant contends mitigating evidence was introduced regarding his "drug abuse and addiction, his intoxication at the time of the offense, his mental and psychological instability as demonstrated by a suicide attempt, and lack of education." There was also evidence that applicant had close family ties. The State responds that this evidence was not presented as "mitigating evidence" but rather came to light during the guilt/innocence phase only through the State's rebuttal witness and the prosecution's cross-examination in its "attempt to impeach applicant's alibi defense and to present a motive for the killing." The State also asserts this evidence was not argued as mitigating applicant's blameworthiness for the crime, but rather applicant's counsel maintained applicant's innocence during his jury argument at the punishment phase. The State contends applicant's claim is "highly suspect" in light of this record.

■ In its findings of fact, the trial judge states applicant's asserted mitigating evidence was not in fact "offered or presented as mitigating evidence at his trial." We find, however, that regardless of when this evidence was presented during applicant's trial—guilt/innocence or punishment—it is before the jury, and it is a proper subject for the jury's consideration when answering the punishment issues. See *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App.1987) (at penalty stage of trial, jury may consider all evidence adduced at guilt stage). Whether evidence has "mitigating value" is not determined by the party who offers it, its time of admission, or its manner of admission (direct or cross-examination) into evidence during a trial. The question is merely whether this evidence was before the jury for its consideration. Thus, we proceed to a review of the evidence presented during applicant's trial.

■ The trial judge made the following pertinent findings of fact in regard to the evidence presented at trial:

9. Applicant presented no evidence at the punishment phase of his trial.

10. During punishment argument, defense counsel did not mention anything concerning drug abuse and addiction, intoxication at the time of the offense, mental and psychological instability, lack of education, positive character traits or close family ties, much less argue that said factors mitigated generally Applicant's blameworthiness for the instant crime, made him unable to commit a deliberate act or showed that he was less likely to be a future danger to society.

11. In his punishment argument, defense counsel reasserted Applicant's innocence for the capital murder.

12. There is no evidence in the record that Applicant was intoxicated at the time of the instant capital murder.

13. There is evidence in the record, presented by the prosecution, from which the jury could infer that Applicant's motivation for committing the underlying burglary in the instant case was his need for money for either drugs, drug deals or both.

14. There is evidence in the record, presented by the prosecution, from which a jury could infer that Applicant was suffering from withdrawal from drugs after his arrest and incarceration in the Harris County jail, approximately one to two weeks following the killing.

15. Through rebuttal witness Bill Scott, the prosecution presented evidence which established, as a collateral matter, that Scott first met Applicant in the Harris County jail ..., while rendering medical assistance to him after he had inflicted rather superficial slash wounds on his wrists ...

16. This court finds that Applicant's suicide attempt, days after the instant capital murder following his arrest and incarceration in the Harris County jail, in and of itself, does not demonstrate psychological or emotional instability either generally or at the time of the instant

capital murder. Moreover, counsel did not mention, much less argue to the jury, that Applicant was psychologically or emotionally unstable.

17. Applicant's asserted Penry evidence concerning lack of education was elicited by the prosecution during cross-examination of Claude Ellis (Applicant's brother and alibi witness) while testing Claude's knowledge of his brother's life and activities. The alleged mitigating evidence consists of a single reference to the fact that Applicant did not complete high school ...

18. Unlike the evidence in Penry, there was no evidence introduced at trial which demonstrates that Applicant is mentally retarded or impaired or that his lack of a complete high school education somehow made him less blameworthy for the instant capital murder. Moreover, counsel did not mention, much less argue to the jury, that Applicant suffered from a lack of education.

19. The court finds that Applicant's alleged evidence of positive character traits and close family ties is not remarkable. Moreover, counsel did not mention, much less argue to the jury, that Applicant had 'redeeming positive character traits' such as courteous, responsible behavior and close family ties.

From the trial judge's findings of fact, we conclude that applicant's asserted "mitigating evidence" consists of testimony regarding a drug problem, a suicide attempt, a lack of education, and close family ties.[5] It is not determinative that applicant's mitigating evidence does not consist of mental retardation and an abusive childhood background, as it did in the *Penry* case. See e.g. *Gribble v. State*, 808 S.W.2d 65 (Tex. Cr.App.1990) (jury instruction required so that jury could consider and give effect to mitigating evidence of troubled childhood, abnormal mental and emotional condition, and sexual aberrations). We conclude, however, that the mitigating evidence in this cause does not rise to the level of *"Penry* evidence" and no additional instruction was necessary for the jury to consider and give effect to this evidence. Applicant's first allegation is without merit.

■ In his second writ allegation, applicant contends the punishment issues "precluded *presentation* and full jury consideration" of "compelling mitigating evidence."[6] Applicant argues that the operation of Art. 37.071 deprived him of his constitutional right to present mitigating evidence because it only permitted the jury to consider this mitigating evidence as aggravating. Essentially applicant claims our capital sentencing scheme is facially unconstitutional. In *Boyd v. State*, 811 S.W.2d 105, 112 (Tex.Cr.App.1991), we noted the United States Supreme Court specifically declined to declare our scheme unconstitutional in *Franklin* and *Penry*, and we also refused to overrule the Supreme Court's precedent. We adhere to that posi-

---

**5.** In its findings of fact, the trial judge states that applicant's suicide attempt, which resulted in superficial wounds, did not indicate "psychological or emotional instability" and that applicant's evidence of positive character traits was "not remarkable." (See findings of fact Nos. 16 and 19). In essence, the trial judge is making a credibility or weight determination as to this evidence, a function more appropriately left to the trier of fact, which was the jury in this cause. Thus, we do not consider these remarks or our perceived force of this evidence, but rather only whether this mitigating evidence was, in some respect, presented to the jury for its consideration.

**6.** Attached to applicant's writ application are affidavits presenting mitigating evidence which was not offered during the punishment phase of his trial. According to applicant, this evidence included "a history of prolonged, destructive drug abuse, an impoverished upbringing in a ghetto racked with violence, drugs and crime, and a tortured family history marked by the abuse of an alcoholic father who glorified violence and criminal activity[,]" and would show he was less morally culpable or undeserving of the death penalty. Included among the several affidavits are two affidavits from his trial attorneys explaining their tactical decision not to present this evidence because, as the writ states, Art. 37.071 "not only drained his evidence of mitigating weight, but converted it to aggravating evidence[,] and "[t]his is unconstitutional." Insofar as the affidavits relate to this constitutional attack, they will not be considered by this Court. See *Ex parte Goodman*, n. 6, —— S.W. at —— ———.

tion today. Applicant's second allegation is also without merit.

Accordingly, the relief sought is denied, and applicant's conviction and sentence are affirmed.

BENAVIDES, J., concurs in the result.

BAIRD, J., not participating.

CLINTON, Judge, dissenting.

The majority tells us that the source of mitigating evidence is unimportant; so long as it has mitigating value beyond the scope of special issues, an instruction is necessary under *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Furthermore, the majority assures us, evidence does not have to fall into the categories of mental retardation or abusive family history to invoke the Eighth Amendment concerns *Penry* addressed. So far, so good. See my dissenting opinion in *Lackey v. State* (Tex.Cr.App., No. 69,144, delivered this day). But then the majority simply "concludes," without further elaboration, that the mitigating evidence produced at applicant's trial "does not rise to the level of" *Penry* evidence. Without some analysis, the Court's opinion does not serve as an adequate guide for future decision.

The majority brushes off applicant's second claim of Eighth Amendment violation based upon mitigating evidence he was constrained from producing at trial because it could only serve to harm him under Article 37.071(b), V.A.C.C.P. Op. at 212–213, & n. 6. I am aware that the Fifth Circuit has rejected such claims when raised under the Eighth Amendment. See *May v. Collins,* 904 F.2d 228 (CA5 1990); *DeLuna v. Lynaugh,* 890 F.2d 720 (CA5 1990). It seems hardly fair that a capital accused should lose such a claim, however, when it was the Eighth Amendment deficiency in the statute, and this Court's staunch refusal to acknowledge it, that forced competent counsel's decision to forego presenting the evidence in the first place. See *Ex parte Herrera,* —— S.W.2d —— (Tex.Cr.App., No. 71,171, delivered this day) (Clinton, J., dissenting). Applicant has indeed "been caught in a web spun of words and logic[.]" *May v. Collins,* supra, at 234 (Reavley, J., concurring). I do not regard *Penry* as having fashioned a right to a jury instruction so much as it reiterated a prohibition against state imposition of the death penalty unless the sentencer has been empowered to take all "relevant" criteria into account. See *Black v. State* (Tex.Cr.App., No. 69,648, delivered this day) (Clinton, J., dissenting). Applicant has shown that he has been sentenced to death on the basis of less than all the constitutionally relevant criteria. It was Article 37.071, supra, and judicial construction thereof, that forced this state of affairs. *Ergo,* the statute operated in an unconstitutional manner as applied to applicant. I would hold he is entitled to relief. Instead, the majority transforms applicant's claim into a "facial" attack, and disposes of it on the basis of *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). *Franklin* did not purport to address the situation before us here. I respectfully dissent.

MALONEY, J., joins.