The STATE of Texas

v.

Larry Eugene McPHERSON, Appellee.

No. 0354–92.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 18, 1992.

Rehearing Denied Jan. 20, 1993.

Certiorari Denied May 24, 1993.

See 113 S.Ct. 2414.

Warren L. Clark, Amarillo, for appellee.

Randall Sherrod, Dist. Atty. and John L. Davis, Asst. Dist. Atty., Canyon, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPELLEE'S PETITIONS FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellee was convicted of capital murder pursuant to Tex.Penal Code Ann. § 19.-03(a)(3). The trial judge submitted the three statutory punishment issues pursuant to Tex.Code Crim.Proc.Ann. art. 37.-071(b)[1] and a fourth punishment issue concerning appellee's mitigating evidence. The jury affirmatively answered the three statutory punishment issues but negatively answered the fourth issue, finding the death penalty was *not* a reasoned moral response after consideration of appellee's mitigating evidence.[2] Appellee was sen-

---

1. As the instant offense was committed on September 22, 1989, all references to art. 37.071 refer to the statute as it appeared at that time.

   Tex.Code Crim.Proc.Ann. art. 37.071(b) provided:
   (b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
   (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

   (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
   (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

2. We assume, for purposes of this opinion, the mitigating evidence, pursuant to *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), was sufficient to require a vehicle, beyond the statutory issues, whereby the jury could consider and give effect to such evidence.

tenced to death. After consideration of appellee's motion for new trial, the trial judge reformed the judgment to reflect a sentence of life. The State appealed. The Court of Appeals reversed holding that the submission of the fourth punishment issue was not authorized by art. 37.071(b) and remanded for a new trial. *State v. McPherson*, 828 S.W.2d 81 (Tex.App.— Amarillo 1992).

We granted the State's Petition for Discretionary Review to determine whether the Court of Appeals erred in ordering a new trial rather than reinstating appellee's death sentence.[3] Additionally, we granted appellee's Petition for Discretionary Review to determine whether the Court of Appeals erred in finding the submission of a fourth punishment issue was not constitutionally required under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and whether the Court of Appeals erred in failing to address appellee's claim that double jeopardy barred the State from seeking the death penalty upon retrial.[4] We will reverse.

I.

In addition to the three punishment issues provided by art. 37.071, the trial judge submitted a fourth issue in the punishment charge as follows:

## SPECIAL ISSUE NO. 4

You are instructed that the term "mitigating evidence" is evidence about any aspect of the Defendant's background, his character, and the crime of which he was convicted that you believe, in fairness or mercy, calls for a sentence less

than death. The purpose of this fourth special issue is to provide you the jury, if you deem it necessary, with a means of considering and giving effect to the mitigating evidence, if any, presented in this case. The sole question before you now is whether, considering all of the evidence, mitigating, if any, and otherwise, presented in both phases of this trial by either party, the death penalty is a reasoned moral response to the Defendant's background, his character, and to the crime of which he was convicted.

Now bearing in mind these instructions and definitions, you will answer the following special issue:

Do you find from the evidence, after considering fully the Defendant's mitigating evidence, if any, that the death penalty is a reasoned moral response to the Defendant's background, his character, and to the crime of which he was convicted?

The jury responded:

We, the Jury, or at least ten (10) jurors, find and determine that the answer to this Special Issue is "No."

/s/ C.L. Boykin

Upon the affirmative findings on the three statutory punishment issues and a negative finding on the fourth punishment issue, the trial judge stated:

Mr. McPherson, the jury has returned its charge, or its verdict to the charge of the offense to which you stand charged by indictment, and that is that you have been found guilty of the offense of capital murder and the Court hereby so finds you guilty of capital murder.

The jury also returned its verdict in this case by which they have answered the

---

The State has not argued otherwise, and the Court of Appeals did not address the issue.

3. The State's ground for review states:
    The Court of Appeals erred in reversing and remanding this capital murder case for an entire new trial instead of reforming the sentence of life back to that mandated by law, namely, death by lethal injection.

4. Appellee's grounds for review state:
    The Court of Appeals erred in holding that a fourth special issue, under the facts of the

instant case, was not constitutionally necessary since a proper instruction would have served the constitutional purposes delineated in *Penry*.

The Court of Appeals erred in failing to address Appellee's [appellant herein] double jeopardy claim and discretional review should be granted to determine whether the Double Jeopardy Clause bars the State from seeking the impose the death penalty against appellee, regardless of whether the trial court accepted an illegal verdict in the punishment phase of his trial.

first three special issues "no"—I'm sorry, first three special issues "yes."

And as you know and understand, the laws of the State of Texas mandates that a "yes" answer of those three special issues result in an automatic determination of the sentence of death by lethal injection according to the laws of the State of Texas.

Counsel has persuaded the Court to submit the issue of mitigation evidence. Mitigating evidence is a matter that is a new concept that the law does not provide for, let me say the statute does not provide for.

It is the order of this Court that the sentence to be imposed in this case is to be death by lethal injection.

Appellee filed a "Motion for New Trial, or In The Alternative, Motion to Reform the Judgment" alleging that he was entitled to relief under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).[5] The trial judge granted appellee's motion and reformed the sentence from death to life.

### II.

The Court of Appeals relied upon Tex. Code Crim.Proc.Ann. art. 37.07 § 1(a), which provides "the verdict in every criminal action must be general." The only exception to the general verdict requirement is art. 37.071 which provides for the submission of statutory punishment issues in the trial of a capital offense. Relying upon our opinions in *Pritchard v. State*, 117 Tex.Crim. 106, 35 S.W.2d 717 (App. 1931); *King v. State*, 135 Tex.Crim. 71, 117 S.W.2d 800 (App.1938); *Garrett v. State*, 159 Tex.Crim. 203, 262 S.W.2d 414 (App. 1953); *McCoy v. State*, 136 Tex.Crim. 473, 126 S.W.2d 487 (App.1939); *and, Chambless v. State*, 67 S.W.2d 309 (Tex.Cr.App. 1934), the Court of Appeals held the submission of the fourth punishment issue vio-

lated art. 37.07 § 1(a) and the trial judge erred in accepting an illegal verdict. *McPherson*, 828 S.W.2d at 85–86.

### III.

In 1972, the Supreme Court struck down our capital sentencing scheme holding it violated the Eighth Amendment prohibition of cruel and unusual punishment. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (decided in conjunction with *Branch v. Texas*). In 1973, the Legislature enacted a new capital sentencing scheme. Acts 1973, 63rd Leg., p. 1125, ch. 426, art. 3, § 1, eff. June 14, 1973. Art. 37.071(b) provided for the submission of two or three statutory punishment issues to the jury, depending upon the evidence presented at trial. *See*, fn. 1, *supra*. If the jury affirmatively answered the issues, the sentence of death was mandatory. Tex.Code Crim.Proc.Ann. art. 37.071(e).

In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the United States Supreme Court held art. 37.071 passed constitutional muster. The Court stated:

> We conclude that Texas' capital-sentencing procedures ... do not violate the Eighth and Fourteenth Amendments. By narrowing its definition of capital murder, Texas has essentially said that there must be at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered. By authorizing the defense to bring before the jury at a separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function ... Because this system serves to assure that sentences of death will not be

---

5. Attached to this motion were affidavits from two jurors. The jurors stated:

   According to the instructions within the charge, we then proceeded to the fourth special issue. I can state absolutely that the vote on the fourth special issue was unanimous and was reached within one hour. There was

some discussion on this issue. However, we basically were in agreement that the imposition of the death penalty against *LARRY EUGENE MCPHERSON* was not an appropriate or reasoned moral response to the facts of this case.

"wantonly" or "freakishly" imposed, it does not violate the constitution.

*Jurek*, 428 U.S. at 276, 96 S.Ct. at 2958. The same capital sentencing scheme was in effect September 22, 1989, the date of the instant offense.

The Texas capital sentencing scheme withstood constitutional challenge until 1989 [6] when the Supreme Court held art. 37.071 was unconstitutional, *as applied*, because the statutory punishment issues failed to provide a vehicle for the jury to give effect to the Penry's mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934. [7] The Court held:

> In order to ensure "reliability in the determination that death is the appropriate punishment in a specific case," [citation omitted], the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime.

*Id.*, 492 U.S. at 328, 109 S.Ct. at 2951 [quoting *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) ]. Because Penry's mitigating evidence was "beyond the scope of the special issues," the evidence could not be given effect within the Texas capital sentencing scheme. *Penry*, 492 U.S. at 317, 109 S.Ct. at 2946.

## IV.

Although we have grappled with the application of *Penry* for some time,[8] the instant case presents our first opportunity to rule on the propriety of submitting a separate punishment issue concerning mitigating evidence.[9] It is important to note that the Supreme Court failed to specify what particular vehicle was required under the Eighth Amendment "for the jury to give mitigating effect to" a defendant's mitigating evidence which falls beyond the scope of the statutory punishment issues. *Penry*, 492 U.S. at 324–328, 109 S.Ct. at 2949–2952.

The Court of Appeals correctly recognized that art. 37.07 § 1(a) requires all verdicts to be general. The Court of Appeals then held that the fourth punishment issue was not a constitutionally necessary excep-

---

**6.** The statute was unsuccessfully challenged in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). Franklin argued the capital sentencing scheme was unconstitutional because it did not allow the jury to consider and give effect to his disciplinary record in prison. The Supreme Court found that such evidence could be adequately considered within the second statutory punishment issue. *Id.*, 487 U.S. at 177, 108 S.Ct. at 2329.

**7.** Penry presented evidence that he was mentally retarded, abused as a child, and suffered from organic brain damage. *Penry*, 492 U.S. at 307–308, 109 S.Ct. at 2941–2942.

**8.** *See, generally, Mines v. State*, 852 S.W.2d 941, (Tex.Cr.App.1992); *Allridge v. State*, 850 S.W.2d 471 (Tex.Cr.App.1991); *Ex parte Williams*, 833 S.W.2d 150 (Tex.Cr.App.1992); *Draughon v. State*, 831 S.W.2d 331 (Tex.Cr.App.1992); *Fuller v. State*, 829 S.W.2d 191 (Tex.Cr.App.1992); *Goss v. State*, 826 S.W.2d 162 (Tex.Cr.App.1992); *Ex parte Kelly*, 832 S.W.2d 44 (Tex.Cr.App.1992); *Joiner v. State*, 825 S.W.2d 701 (Tex.Cr.App.1992); *Miniel v. State*, 831 S.W.2d 310 (Tex.Cr.App.1992); *Moody v. State*, 827 S.W.2d 875 (Tex.Cr.App.1992); *Ex parte Harris*, 825 S.W.2d 120 (Tex.Cr.App.1991); *Gosch v. State*, 829 S.W.2d 775 (Tex.Cr.App.1991); *Ex Parte Bower*, 823 S.W.2d 284 (Tex.Cr.App.1991); *Ex Parte Garrett*, 831 S.W.2d 304 (Tex.Cr.App.1991); *Ex Parte McGee*, 817 S.W.2d 77 (Tex.Cr.App.1991); *Mooney v. State*, 817 S.W.2d 693, 705–06 (Tex.Cr.App.1991); *Earhart v. State*, 823 S.W.2d 607 (Tex.Cr.App.1991); *Ramirez v. State*, 815 S.W.2d 636 (Tex.Cr.App.1991); *Ex Parte Rogers*, 819 S.W.2d 533 (Tex.Cr.App.1991); *Trevino v. State*, 815 S.W.2d 592 (Tex.Cr.App.1991); *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App.1991); *Ex Parte Goodman*, 816 S.W.2d 383 (Tex.Cr.App. 1991); *Selvage v. Collins*, 816 S.W.2d 390 (Tex. Cr.App.1991); *Ex Parte Ellis*, 810 S.W.2d 208 (Tex.Cr.App.1991); *Ex Parte Baldree*, 810 S.W.2d 213 (Tex.Cr.App.1991); *Ex Parte Herrera*, 819 S.W.2d 528 (Tex.Cr.App.1991); *Lewis v. State*, 815 S.W.2d 560 (Tex.Cr.App.1991); *Boyd v. State*, 811 S.W.2d 105 (Tex.Cr.App.1991); *Gribble v. State*, 808 S.W.2d 65 (Tex.Cr.App.1990); *James v. State*, 805 S.W.2d 415 (Tex.Cr.App. 1990); *Hammond v. State*, 799 S.W.2d 741 (Tex. Cr.App.1990); *Jackson v. State*, 822 S.W.2d 18 (Tex.Cr.App.1990); *and, Kinnamon v. State*, 791 S.W.2d 84 (Tex.Cr.App.1990).

**9.** In *Fuller v. State*, 829 S.W.2d 191, 209 (Tex.Cr. App.1992), we upheld a jury nullification charge which instructed the jury to answer one of the statutory punishment issues "no" if the jury felt the mitigating evidence militated against the death penalty. However, we did not hold that such an instruction was the exclusive manner of complying with *Penry*.

tion to art. 37.07 § 1(a). The Court noted that a "nullification" instruction, allowing the jury to answer one of the statutory punishment issues negatively if they felt the mitigating evidence militated against the death penalty, would satisfy the Eighth Amendment considerations under *Penry* and not violate art. 37.07 § 1(a). *McPherson*, 828 S.W.2d at 83. We have held that such an instruction may be adequate to provide the constitutional protection required by *Penry*. *Fuller v. State*, 829 S.W.2d 191, 209 (Tex.Cr.App.1992). *See*, fn. 8, *supra*. However, at the time of appellee's trial, we had not ruled on the sufficiency of an instruction to meet the demands of *Penry*. Clearly, the trial judge believed the Eighth Amendment and *Penry* required that the jury have a vehicle to consider and give effect to appellee's mitigating evidence. Having no guidance from the Supreme Court, or this Court, the trial judge chose to provide the fourth issue as a vehicle pursuant to the Eighth Amendment, as interpreted in *Penry*, which supersedes art. 37.07 § 1(a).

▆▆▆▆ The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, the Eighth Amendment takes precedence over art. 37.07 § 1(a). Considering the failure of the Supreme Court in *Penry* to provide guidance concerning the type of vehicle required to enable the jury to consider and give effect to mitigating evidence, and the lack of guidance at the time of appellee's trial, we will not fault the trial judge for submitting the fourth punishment issue in attempting to comply with the dictates of the Eighth Amendment. Once the trial judge determined appellee's mitigating evidence was beyond the scope of the statutory punishment issues, a vehicle, allowing the jury to consider and give effect to that evidence, was constitutionally required. Accordingly, we hold that the fourth punishment issue, which provided the jury a "means of considering and giving effect to [appellee's] mitigating evidence," was an appropriate response to the Supreme Court's decision in *Penry*.

In light of our holding, the remaining grounds for review are dismissed as moot. Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed. The cause is remanded to the Court of Appeals.[10]

CLINTON, Judge, concurring.

Faced with the indisputable fact that a jury, authorized by the trial court to do so *"in fairness or mercy"* in accordance with instructions and a fourth special issue, unanimously determined that imposition of the death penalty on appellant is not *"a reasoned moral response to [his] background, his character and to the crime of which he was convicted,"* a reviewing court is obliged to reject parochial rationales that would set aside the constitutional consequences of that decision.[1] See and compare *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989);[2]

---

**10.** Appellant's appeal to the Court of Appeals was abated pending resolution of the State's appeal.

**1.** All emphasis here and throughout this opinion is mine unless otherwise indicated.

**2.** The lesson of *Penry* is its conclusion in Part III, *viz:*

> "In this case, in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence ... by

declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision. Our reasoning in *Lockett* [*v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)] and *Eddings* [*v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)] thus compels a remand for resentencing so that we do not 'risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.'

*Jurek v. State*, 522 S.W.2d 934 (Tex.Cr. App.1975).[3]

The State contended for, and now naturally supports, the determination of the court of appeals that the trial court erred in submitting the fourth special issue because it is "not authorized by Texas Law." *State v. McPherson*, 828 S.W.2d 81, at 83–84 (Tex.App.—Amarillo 1992).[4] Because the opinion of this Court fails directly to address that proposition, cf. opinion, at 849–850, my purpose in writing is to demonstrate that contention and related reasons given for characterizing the verdict below as "illegal" are without merit. *State v. McPherson*, supra, at 84–85.

The court of appeals opined that while "a functional equivalent to an instruction might satisfy the Federal *Penry* requirement, under the relevant Texas statute, a special issue may not serve in that capacity" because Article 37.07, § 1(a), V.A.C.C.P., provides that "[t]he verdict in every criminal action must be general." *McPherson*, supra, at 83. But, in my view, where the question is propriety of submitting a special issue on punishment under the rubric of *Penry v. Lynaugh*, supra, reliance on such literal language of an archaic generality is severely misplaced.

Dating back to Old Code days when a jury found guilt and assessed punishment simultaneously, the provision lost its original intendment and function with advent of the alternative bifurcated procedure in Acts 1965, 59th Leg.Vol. 2, Ch. 722, p. 317. Thereafter, the trial judge first submitted "the issue as to guilt or innocence ... without authorizing the jury to pass upon the punishment to be imposed," and then in the latter separate proceeding the court gave "such additional written instructions as may be necessary[.]" Article 37.07, § 3(b); formerly 2.(c). While it is true that the "verdict" is not "complete until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment," *id.*, § 3(c); formerly 2.(d), the fact remains that the "general verdict" pertains only to guilt or innocence, whereas on punishment there is a separate "specific verdict" as to particular matters, *viz:* term of confinement, amount of fine and, when at issue, enhancement convictions, use of a deadly weapon, recommendation on probation, *et cetera.*

Furthermore, since 1973, the punishment procedure in capital murder cases is provided exclusively by Article 37.071 rather than by Article 37.07, although the finding of guilt is still returned in a separate "general verdict." See Article 37.07, § 2(b), and compare with Article 37.071, § 2, *et seq.*

The court of appeals read two earlier pre-*Penry* opinions of this Court to convey the idea that the three special issues constitute "an exception to the statutory prohibition of special issues." *McPherson*, supra, at 83. Both were addressing denials of requests for special findings at *the guilt phrase* of trial; this Court alluded to Article 37.071, relative to Article 37.07, § 1(a), and although the Court may have overstated the effect of "the statutory prohibition of special issues" in the latter, in fact the Court applied that "prohibition" solely to special issues sought at the *guilt* stage. *Harris v. State*, 790 S.W.2d 568, at 579

[citations omitted]. 'When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.' [citations omitted.]"
*Id.,* 492 U.S. at 328, 109 S.Ct., at 2952, 106 L.Ed.2d, at 284.

3. Writing for the Court, Judge Morrison expressed an insightful understanding of basic principles to inform and guide participants in the judicial component of our criminal justice system, *viz:*

"Some discretion is inherent and desirable in any system of justice, from arrest to final judgment.... To eliminate all discretion on the part of the jury would be to risk elimina-

tion of that *valuable element* which permits *individualization based on consideration of all extenuating circumstances* and would eliminate *the element of mercy,* one of the fundamental traditions of our system of criminal jurisprudence."
*Id.,* at 940.

4. Instead of the new trial ordered by the Amarillo Court of Appeals, however, the State prays here that we reverse the judgment of that court insofar as it remands the cause for a new trial, and then "reform the sentence of the trial court to reinstate the sentence of death[.]" State's Brief at 8, 13.

(Tex.Cr.App.1989); [5] *Stewart v. State*, 686 S.W.2d 118, at 124 (Tex.Cr.App.1984).[6] Thus in a capital case those decisions do not preclude using an appropriate special issue as a vehicle to inform the jury of its prerogative to consider and give effect to mitigating evidence in making a constitutional determination whether the defendant shall be sentenced to death or life imprisonment. Article 37.071(a).

In the instant cause the concern of the trial court was to provide the jury with a constitutional "vehicle" under *Penry* for expressing its "reasoned moral response" to mitigating evidence through "informing the jury that it could consider and give effect to the mitigating evidence ... by *declining to impose* the death penalty." *Id.*, 492 U.S. at 328, 109 S.Ct., at 2952, 106 L.Ed.2d, at 284. That the judge chose first to instruct the jury as to the law of mitigation under *Penry*, and then to frame a fourth special issue designed to elicit its "reasoned moral response" is no more foreclosed by Article 37.07, § 1(a), than are the three special issues devised by the Legisla-

**5.** In *Harris v. State*, supra, the late Judge Duncan wrote for the Court about submitting a special issue inquiring whether the jury found a witness to be an accomplice, *viz:*

"... Appellant's claim that the court's ruling was in error is without merit. Not only did the accomplice witness instruction properly and adequately protect appellant, but Article 37.07, § 1(a), V.A.C.C.P., provides that '[T]he verdict in every criminal action shall be general.' Thus, as was stated in *Stewart v. State*, 686 S.W.2d 118, 124 (Tex.Cr.App.1984), '[o]ther than the provisions in Article 37.071, V.A.C.C.P., Texas jurisprudence has no authority allowing the submission of special issues to a jury in a criminal case.' This is not to say that a special issue could never be constitutionally necessary despite the statutory prohibition of Article 37.07, § 1(a), supra. In this case, however, the trial court was correct in denying appellant's request."

**6.** In *Stewart v. State*, supra, appellant contended that under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) he was entitled to a special issue inquiring whether the jury found he personally killed the deceased or that he intended to kill or attempted to kill her. After pointing out for the Court that *Enmund* does not require such a finding, then Judge McCormick added:

ture to narrow jury discretion to *impose* the death penalty.

The court of appeals nonetheless believed that because the *Penry* court wrote in terms of an "instruction" serving those constitutional purposes, "a special issue is not constitutionally necessary, and thus, is not an exception to the statutory prohibition of art. 37.07." *McPherson*, supra, at 83. But not only had Penry stated his claims in those terms in the trial court and in this Court, in his federal habeas petition and in the Court of Appeals for the Fifth Circuit, so also the Supreme Court granted certiorari in substantially the same terms. *Penry*, 492 U.S. at 310, 311–313, 109 S.Ct., at 2942, 2943–2944, 106 L.Ed.2d, at 272, 273–274. By addressing his claims in those terms, therefore, the Supreme Court had no reason to deal with propriety of a special issue alone or in conjunction with an instruction; that it remained silent on that point does not mean that it ruled out a special issue. Indeed, ordinarily the Supreme Court leaves such matters as procedural "vehicles" to the States, just was done in *State v. Wagner*, 309 Or. 5, 786

"Furthermore, Article 37.07, Section 1(a) provides that '[T]he verdict in every criminal case must be general.' Other than the provisions in Article 37.071, V.A.C.C.P., Texas jurisprudence has no authority allowing the submission of special issues to a jury in a criminal case. The trial judge acted properly in denying appellant's request."
*Id.*, at 124.
Also raised in *Stewart* was the constitutionality of Article 37.071, in that "it contains no provisions for directing and instructing the jury's consideration of mitigating circumstances at the punishment phase of the trial." *Id.*, at 121. The majority disposed of that contention thus:

"Because the Texas statutes do not preclude consideration of mitigating circumstances and because appellant has not proven the jury did not consider the mitigating circumstances in answering the first special issue, we overrule his fifth ground of error."
*Id.*, at 122. But see dissenting opinion at 126 (jury must not be precluded "from according independent weight to factors that are mitigating but perhaps irrelevant to the probability issue of future dangerous conduct;" majority has "repeatedly denied the utility, much less necessity, of informing the jury that they *may* so consider that evidence." [emphasis in original] ). *Penry*, of course, has since resolved that controversy. See *post*, at 852–853.

P.2d 93 (1990) (opting for fourth special issue), cert. denied 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 171 (1990), on remand from *Wagner v. Oregon,* 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989) (judgment in 305 Or. 115, 752 P.2d 1136 vacated and remanded for further consideration in light of *Penry* ).

After *Penry,* failure of a trial court to inform the jury that it could consider and give effect to mitigating circumstances violates rights of defendant under the Eighth Amendment and renders our capital punishment scheme mandated by former Article 37.071 unconstitutional. Under the Supremacy Clause, the Constitution "shall be the supreme Law of the Land; and *the Judges in every State shall be bound thereby,* any Thing in *the Constitution or Laws of any State to the Contrary notwithstanding.*" Article VI, second paragraph.

The judge of the court below manifested his understanding and appreciation of the situation when he caused the court to give the instruction and to submit the fourth special issue to the jury. And, as the majority opinion at 847–848 reflects, the trial judge also understood and appreciated the dilemma thus created by affirmative answers to statutory issues and the negative answer to the constitutional issue: on one horn, the statutory mandate that the trial court sentence appellant to death because the jury returned an affirmative finding on each of the only three legislatively prescribed special issues; on the other horn, the absence of an explicit statutory mandate to implement the implicit constitutional dictate that bars the State of Texas from executing appellant because the jury returned a negative finding on special issue four, i.e., that the death penalty is *not* a reasoned moral response to mitigating evidence favoring appellant.

As it turned out on motion to reform the judgment, the trial judge opted for the constitutional dictate and, accordingly, reformed the sentence of death to life imprisonment. In that he and we are by our oaths constitutionally bound to uphold the Eighth Amendment, the judge rightly caused the trial court to render the only judgment and impose the only sentence sanctioned by the Eighth Amendment, just as rightly we now affirm its reformation. Compliance with the Supremacy Clause may not be excused by the omission of the Legislature specifically to authorize the trial judge to instruct the jury according to *Penry* and to submit a special issue to elicit its "reasoned moral response" to mitigating evidence. When the choice is between life and death, the Eighth and Fourteenth Amendments command the States to void the risk that the death penalty will be imposed when mitigating factors extant may call for life. *Penry,* 492 U.S. at 328, 109 S.Ct., at 2952, 106 L.Ed.2d, at 284.

With those comments and observations, I join the opinion of the Court.